IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JONATHAN MAKELA, as Personal
Representative of the Estate of Douglas
Makela,

                Plaintiff,

v.

UNITED STATES OF AMERICA,

                Defendant.

OPINION AND ORDER

18-cv-424-wmc

In this lawsuit, the personal representative of the estate of Douglas R. Makela is seeking damages from the United States of America for personal injuries arising under the Federal Tort Claims Act, 28 U.S.C.A. § 2671 *et. seq.*[1] Before the court is defendant's motion to dismiss any claims under Wis. Stat. § 101.11, Wisconsin's Safe Place Statute, on the basis that the statute does not apply as a matter of law. (Dkt. #15.) For the reasons that follow, the court will grant that motion.

ALLEGATIONS OF FACT[2]

Douglas Makela was a resident at the Tomah Veterans Affairs Medical Center ("Tomah VA"). At the time of the incident at issue here, Makela was participating in the homeless veterans program run by the Veterans Assistance Foundation out of Building 407 on the Tomah VA campus. On December 29, 2015, while walking from Building 407 to

---

[1] Plaintiff Douglas Makela passed away on October 7, 2018, shortly after the filing of this lawsuit. Plaintiff seeks to substitute Jonathan Makela, as the personal representative of the Estate of Douglas Makela as plaintiff. (Dkt. #21.) That motion is granted, and the court has corrected the caption to reflect this substitution.

[2] Under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

the smoke shack at the Tomah VA, Makela allegedly slipped and fell on accumulated ice and/or snow on the walkway and struck a bench with his body causing severe injury. Plaintiff alleges that the United States failed to maintain the walkway in violation of Wisconsin's Safe Place Statute. Plaintiff also asserts a negligence claim, which is not a part of the present motion.

OPINION

Wisconsin's Safe Place Statute imposes a duty on every employer and every owner of a public building to "construct, repair or maintain such place of employment or public building as to render the same safe." Wis. Stat. § 101.11. The statute imposes a higher standard of care than that imposed by ordinary negligence. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 682 N.W.2d 857. Here, that statute's applicability turns on whether the walkway between the Tomah VA and Building 407 qualifies as a "place of employment" under Wis. Stat. § 101.01(11) and/or a "public building" under Wis. Stat. § 101.01(12). Because the court finds that the walkway does not meet the legal definition of either, the court will grant defendant's motion to dismiss.[3]

I. Place of Employment

The Safe Place Statute provides that a "place of employment":

> includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on,

---

[3] Because of this holding, the court need not address the government's other ground for dismissal of plaintiff's Safe Place claim -- that the accumulated ice and snow on the walkway presented a "temporary condition."

2

> or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another *for direct or indirect gain or profit*.

Wis. Stat. § 101.01(11) (emphasis added).

Wisconsin has generally followed a bright-line rule that non-profit or government institutions are *not* places of employment because they lack this profit-generating motive. *See, e.g., Ruppa v. Am. States Ins. Co.*, 91 Wis. 2d 628, 639, 284 N.W.2d 318 (1979) ("Institutions operated by nonprofit or governmental organizations are not places of employment[.]"); *Atl. Specialty Ins. v. United States*, No. 16-cv-282-wmc, 2017 WL 1380625, at *2 (W.D. Wis. Apr. 17, 2017) ("Congress has made the determination as a matter of law that the Postal Service is a governmental organization that is not operated for profit.") (internal quotations omitted). As plaintiff correctly points out, however, there is no categorical exemption for government or non-profit institutions. Accordingly, "courts should conduct an individualized inquiry to determine whether the intent of a particular organization is to make a profit." *Flodin v. United States*, No. 13-CV-853-BBC, 2015 WL 3651806, at *2 (W.D. Wis. June 11, 2015).

Here, this inquiry is easily resolved because the Tomah VA is a government organization that does not directly or indirectly generate a "gain or profit." The Department of Veterans Affairs "is an executive department of the United States," 38 U.S.C. § 301(a), and the law requires the Tomah VA to deposit revenues in the Department of Veterans Affairs Medical Care Collections Fund, 38 U.S.C. § 1729A. Any amounts collected are then used for expenses and furnishing medical care and services to veterans, not to generate a gain or profit. 38 U.S.C. § 1729A(c)(1)(A)-(B); *see also Flodin*,

2015 WL 3651806, at *2 ("Congress has established as a matter of law that the purpose of the clinic is to provide service to veterans, not to make money[.]").

Acknowledging that the Tomah VA lacks a for-profit motive, Makela argues that the Veterans Assistance Foundation, which operates the homeless veterans program in Building 407, "in essence, acted as a for-profit entity" and transformed the building and its appurtenances into a place of employment. (Pl.'s Br. In Opp'n (dkt. #16) 6.) The Veteran's Assistance Foundation is also a 501(c)(3) non-profit organization whose mission is "to identify and address the issues faced by Veterans and low income persons."[4] The fact that the Foundation raises money neither changes its status as a non-profit, nor does it make it an employer within the meaning of the safe place statute. *See Voeltzke v. Kenosha Mem'l Hosp., Inc.*, 45 Wis. 2d 271, 281, 172 N.W.2d 673 (1969) ("The fact that employees of other employers . . . use the parking lot does not make the hospital an owner of a place of employment[.]").

Still, plaintiff further argues that the determination of an institution's non-profit status is premature at the pleading stage, relying on *Leitner v. Milwaukee County*, 94 Wis. 2d 186, 287 N.W.2d 803 (1980). (Pl.'s Opp'n (dkt. #16) 9.) However, *Leitner* dealt with an employee of a for-profit business under contract with a publicly-owned zoo. *Leitner*, 94 Wis. 2d 186. There, the primary issue was whether to analyze the profit motive of the property owner (a municipality) or an independent contractor employed on the property. *Id*. at 190. No similar issue exists in the present case, as a government organization -- the Tomah VA -- is both the owner *and* employer. Moreover, subsequent decisions make clear

---

[4] *See* Veterans Assistance Foundation, Inc. 2016 Form 990, (Sep. 10, 2018), https://www.guidestar.org/profile/39-1798221.

that discovery would be a "pointless exercise" where Congress has already determined that a "governmental organization . . . is not operated for profit." *Ribarich v. United States*, No. 14-CV-735-BBC, 2015 WL 1321661, at *5 (W.D. Wis. Mar. 24, 2015) ("Although *Leitner* may provide the general rule, I do not think that aspect of *Leitner* applies in this case. Congress has made the determination as a matter of law that the Postal Service is governmental organization that is not operated for profit[.]"); *Atl. Specialty Ins.*, 2017 WL 1380625, at *2. Here, Congress has established as a matter of law that the purpose of the VA clinic is not to make a profit. *Flodin*, 2015 WL 3651806, at *2.

## II. Public Building

A "public building" under the Safe Place Statute

> means *any structure*, including exterior parts of such building, such as a porch, exterior platform, or steps providing means of ingress or egress, used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public or by 3 or more tenants.

Wis. Stat. § 101.01(12) (emphasis added).

The United States contends that the walkway on which Makela was injured falls outside this definition, and the court agrees. First, it is not a "structure," nor does it have the characteristics of a building. Second, the Wisconsin Supreme Court has consistently held that a sidewalk is not a public building. *See, e.g.*, *Bauhs v. St. James Congregation, Madison*, 255 Wis. 108, 110, 37 N.W.2d 842 (Wis. 1949) ("It is clear that a sidewalk is not a structure."); *see also Meyers v. St. Bernard's Congregation*, 268 Wis. 285, 287-88, 67 N.W.2d 302 (Wis. 1954) ("[A] sidewalk area outside the building cannot be considered a part of the building.").

While plaintiff appears to concede the sidewalk is not a public building, he nonetheless argues that the statute still applies because the walkway is "appurtenant" to a place of employment. (Pl.'s Opp'n (dkt. #16) 9.) As the United States correctly points out, however, the phrase "appurtenant to" is only included in the definition of "place of employment." (Def.'s Reply (dkt. #19) 5.) Those words are notably absent from the definition of "public building." *Compare* Wis. Stat. § 101.01(11) (defining "place of employment"), *with* Wis. Stat. § 101.01(12) (defining "public building"). Instead, the definition explicitly defines what "exterior parts" of a building are included, and while "steps providing means of ingress and egress" are included, sidewalks are not. Because the Tomah VA is not a place of employment, the fact that the walkway is appurtenant to the building is meaningless.

## ORDER

IT IS ORDERED that:

1) Defendant United States of America's motion to dismiss count II of the amended complaint (dkt. #9) is GRANTED.

2) Plaintiff's motion for substitution of parties and to extend 90-day deadline under Rule 25 (dkt. #21) is GRANTED. The clerk's office is directed to change the caption to reflect this substitution.

Entered this 1st day of April, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge